

## Fourth Court of Appeals
### San Antonio, Texas

**MEMORANDUM OPINION**

No. 04-22-00270-CV

John P. **BOERSCHIG**,
Appellant

v.

**RIO GRANDE ELECTRIC COOPERATIVE**, Inc.,
Appellee

From the 63rd Judicial District Court, Kinney County, Texas
Trial Court No. 4205
Honorable Roland Andrade, Judge Presiding

Opinion by:     Rebeca C. Martinez, Chief Justice

Sitting:     Rebeca C. Martinez, Chief Justice
             Beth Watkins, Justice[1]
             Sandee Bryan Marion, Chief Justice (Ret.)[2]

Delivered and Filed: January 17, 2024

AFFIRMED

The underlying dispute centers on whether appellee/cross-appellant Rio Grande Electric

Cooperative, Inc. possesses an easement — whether express, prescriptive, or by estoppel — for its

electric poles and overhead electric lines that encumber real property presently owned by

appellant/cross-appellee John P. Boerschig.  Boerschig appeals from a final judgment, rendered in

accordance with a jury verdict, that awards him nothing on his trespass claim, denies his requests

---

[1] Justice Watkins joins Parts I, III, and IV of the opinion, and concurs in the judgment only as to Part II of the opinion.
[2] The Honorable Sandee Bryan Marion, Chief Justice (Retired) of the Fourth Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court.  *See* TEX. GOV'T CODE ANN. §§ 74.003, 75.002, 75.003.

for injunctive and declaratory relief, and awards a total of $216,955.22 in trial and contingent

appellate attorney's fees to Rio Grande. In six issues, which we broadly reconstrue and categorize

as three, Boerschig argues that (1) Rio Grande presented legally insufficient evidence of its

affirmative defense of an easement by estoppel; (2) the trial court abused its discretion in refusing

a jury instruction that Boerschig requested; and (3) the trial court abused its discretion in awarding

attorney's fees to Rio Grande. We affirm.[3]

## I. BACKGROUND

In 2002, Boerschig purchased 6,397.13 acres of land that is commonly referred to as the

U-Bar Ranch (the "U-Bar"). An electric line, which ran on top of 17 to 22 thirty-five-foot-tall

utility poles, traversed approximately 8,000 feet of the U-Bar (the "original electric line").[4]

Boerschig acknowledges seeing the original electric line when he purchased the U-Bar.

Around 2012, Rio Grande set about to upgrade the original electric line (the "upgraded

electric line"). Before Rio Grande undertook the upgrade project, Theresa Quiroz, director of

administrative services at Rio Grande, supervised Rio Grande's attempt to identify the easement

that provided for the original electric line — and by extension any necessary upgrades. Initially,

Rio Grande identified a document known as the Langston easement and forwarded it to Boerschig.

Boerschig responded, through counsel, by highlighting that the Langston easement did not govern

the original electric line on the U-Bar.[5] Thereafter, Rio Grande conducted a chain of title search

on Boerschig's property. At trial, Quiroz explained how Rio Grande relied on three documents to

---

[3] In three conditional issues, Rio Grande argues that: (1) it conclusively established its affirmative defenses of an express or a prescriptive easement; (2) the evidence supporting the jury's decision that neither an express nor a prescriptive easement exist is factually insufficient; and (3) the trial court erred in submitting the prescriptive easement question to the jury. We need not address Rio Grande's conditional issues because we overrule Boerschig's first issue. *See* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

[4] Rio Grande, using funds from the Rural Electrification Administration, installed the original electric line in 1948.

[5] The Langston easement provided for the electric line to the Rose Ranch, a neighboring property that Boerschig purchased in 1996.

determine that it had the legal right to construct the original electric line and the upgraded electric line.

First, a deed, dated May 22, 1930, wherein Jim Clamp conveyed to his wife, Mary Clamp, certain real estate within Kinney County, Texas ("Jim's 1930 deed"). Jim's 1930 deed specifically identifies:

> Beginning at a stake and fence corner in the east line of Survey No. 82. [*illegible*], Co. Block 6, in the north boundary line of the Laguna Road;
>
> . . .
>
> . . . 3955 vrs. [varas] to fence corner in the east boundary line of the Silver Lake Road in the north line of survey No. 7 1/2 for the N.W. corner of this tract of land;
>
> . . .
>
> Thence S. 36 W. at 2885 vrs. a gate 2966.5 vrs. to fence corner the intersection of the Silver Lake Road with the Rock Springs Road;

Second, the last will of Mary ("Mary's will"), who died on May 11, 1947. Mary's will provides in relevant part:

> I give, devise and bequeath unto my beloved husband, Jim Clamp, all income from my real estate, deeded to me and my interest in all community property, after all taxes and interest obligations are paid. I particularly request that real estate now on record in my name, namely, Las Moras Mt. Pasture consisting of 5868.6 acres, be NOT sold during my husband's lifetime, and that it be held ten (10) years longer after his demise before it is sold.

Mary's will instructs that, upon Jim's death, all of her interest in any real and personal property should be given to her sisters, brothers, nieces, and nephews. Mary's will named her nephew, Ogden Dooley, as independent executor.

Third, a document executed by Dooley, which provides:

RIGHT OF WAY EASEMENT

> KNOW ALL MEN BY THESE PRESENTS, That the undersigned (unmarried) (husband and wife) for a good and valuable consideration, the receipt whereof is hereby acknowledge[d], do[] hereby grant onto _____, a

corporation whose post office address is Brackettville, Texas, and its successors or assigns, the right to enter upon the lands of this undersigned, situated in the County of _____, State of Texas, and more particularly described as follows:

*5681 acres laying north of the Laguna Road and east of the Rocksprings and Silver Lake [R]oad.  [sic] and bounded on the north by the Webb ranch.*[6]

and to place, construct, operate, repair, maintain, relocate and replace thereon and in or upon all streets, roads or highways abutting said land an electric transmission or distribution line or system, and to cut and trim trees and shrubbery to the extent necessary to keep them clear of said electric line or system, and to cut down from time to time all dead, weak, leaning or dangerous trees that are tall enough to strike the wires in falling.

In granting this easement it is understood that at pole location, only single pole and appurtenances will be such as to form the least possible interference to farm operations, so long as it does not materially increase the cost of construction.

The undersigned covenants that he is the owner of the above described lands of whatsoever character except those held by the following persons:

[Blank]

It is further understood that, whenever necessary, words used in this instrument in the singular shall be construed to read in the plural and that words used in the masculine gender shall be construed to read in the feminine.

IN WITNESS THEREOF, the undersigned has set his hand and seal this *4* day of *November*, 19*47*.

Signed, Sealed and delivered
in the presence of :

_____

_____

*CLAMP*
*Estate of Mary*
*By Ogden Dolly Ex.*

(the "Dooley easement").  The trial court admitted Jim's 1930 deed, Mary's will, and the Dooley easement into evidence.

Quiroz, being a native of Kinney County, Texas, linked the historic roadway references in Jim's 1930 deed and the Dooley easement to their present-day names based on her personal

---

[6] Italics text represents handwritten portions.

knowledge of the area. Laguna Road is now known as Highway 334, Rock Springs Road is now known as Highway 674, and Silver Lake Road is a part of Highway 674 that "splits off." On direct examination by Rio Grande, Quiroz testified:

> Q.    And, again, [Jim's 1930 deed] actually has abstracts from which you can plot metes and bounds, correct, if you were a surveyor?
>
> A.    Yes, uh-huh.
>
> Q.    All right. Now, when you were looking for — is there any doubt in your mind that [the Dooley easement] is the appropriate easement for this —
>
> A.    Not at all.
>
> Q.    — property? Okay.
>
> A.    Not at all.

On cross examination by Boerschig, Quiroz admitted that the Dooley easement covered 5,681 acres but that Boerschig owns a total of 6,397.

Boerschig disputed Rio Grande's contention that the Dooley easement provided it with the legal authority to take down the original electric line and construct the upgraded electric line, which runs on top of 60 forty-five-foot-tall utility poles. Boerschig sued Rio Grande for trespass, and he sought injunctive and declaratory relief and an award of attorney's fees. Rio Grande answered with a general denial and counter-claimed with the affirmative defenses of express easement, prescriptive easement, and easement by estoppel. Rio Grande also sought attorney's fees.

In February 2016, the case was tried to a jury. Ten jurors returned a verdict finding that Rio Grande possessed neither an express nor a prescriptive easement. However, in response to Question No. 3, the jury found that Rio Grande possessed an easement by estoppel and, in response to Question No. 4, that the upgraded electric line did not exceed the scope of the estoppel easement. Thereafter, Rio Grande filed an application for the trial court to award it attorney's fees in the amount of $323,911.44 for "segregated . . . attorney's fees attributable to the declaratory

judgment." On April 8, 2022, the trial court signed a final judgment in accordance with the jury's verdict that awards Boerschig nothing on his trespass claim, denies his requests for injunctive and declaratory relief, declares that Rio Grande had an easement by estoppel "across the Power Line Route," and awards a total of $216,955.22 in trial and contingent appellate attorney's fees to Rio Grande. Boerschig timely appeals from this judgment.

## II. EASEMENT BY ESTOPPEL

Boerschig raises approximately twenty-five overlapping arguments for why we "should grant judgment to Boerschig on [Rio Grande's] affirmative defense of easement by estoppel" and "reverse the [j]udgment because the Dooley Document is legally defective." Liberally construing Boerschig's briefing,[7] we conclude that his first issue is that Rio Grande presented legally insufficient evidence of its affirmative defense of easement by estoppel.[8] As construed, Boerschig's first issue advances four sub-issues. Specifically, Boerschig contends: (1) the Dooley easement constitutes legally insufficient evidence of the first element of an easement by estoppel affirmative defense because allowing it to serve as some evidence violates the statue of frauds, the statute of conveyances, and the recordation statute; (2) Dooley, the independent executor of Mary's

---

[7] Verbatim, all six issues that Boerschig raises are: "1. The District Judge erred in denying: a. Boerschig's oral motion for directed verdict at trial. b. Boerschig's objections to questions and instructions on the jury charge. c. Boerschig's submissions to be included in the jury charge. 2. The District Judge erred in ruling that Boerschig did not have standing to challenge Ogden Dooley's authority to sign the Dooley Document as administrator of the estate of Mary Clamp. 3. The District Judge erred in submitting Questions 1 – 4 to the jury. 4. The Jury erred in answering Yes to Question 3 and No to Question 4. 5. The District Judge erred in denying, or failing to grant: a. Boerschig's Motion for Partial New Trial. b. Boerschig's Motion to Disregard Jury Finding and Motion for Judgment. c. Boerschig's Corrected Motion to Disregard Jury Finding and Motion for Judgment. d. Boerschig's Application for Award of Attorney's Fees. e. Boerschig's Motion for Judgment Notwithstanding Verdict and Motion for New Trial. 1 [sic] 6. The District Judge erred in granting judgment: a. That RGEC had an easement by estoppel across the Power Line Route. b. That the construction of the Power Line Upgrade across Plaintiff's property did not exceed the scope of the easement by estoppel. c. Awarding attorney's fees to RGEC."

[8] Boerschig does not explain how his issues, as briefed, and his arguments — alone or combined — entitle him to the rendition of judgment that he seeks on appeal. We liberally construe them as articulating a legal sufficiency challenge because a successful legal sufficiency challenge will generally yield the rendition judgment that he seeks. *See, e.g.,* *Ramsey v. Champion*, No. 10-12-00394-CV, 2014 WL 1882758, at *5–6 (Tex. App.—Waco May 8, 2014, pet. denied) (mem. op.) ("Having found that the evidence was legally insufficient to support the trial court's judgment [that declared an easement by estoppel], we reverse the judgment of the trial court and render judgment that Champion's request for a declaratory judgment is denied.").

estate, could not make a representation to Rio Grande as the "property owner" of the U-Bar and Rio Grande cannot rely on silent acquiescence by Mary's heirs; (3) Rio Grande presented no evidence that it believed the representations in the Dooley easement; and (4) equitable principles preclude Rio Grande from maintaining its easement by estoppel affirmative defense.

## A.    Standard of Review

When conducting a legal sufficiency review, we consider all of the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable fact finder could and disregard contrary evidence unless a reasonable fact finder could not. *Id*. at 827.

When a party attacks the legal sufficiency of an adverse finding on which it did not have the burden of proof, it must demonstrate there is no evidence to support the adverse finding. *Horner v. Heather*, 397 S.W.3d 321, 324 (Tex. App.—Tyler 2013, no pet.) (citing *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983)). We will sustain a legal-sufficiency or "no evidence" challenge if the record shows one of the following: (1) a complete absence of evidence of a vital fact, (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence establishes conclusively the opposite of the vital fact. *City of Keller*, 168 S.W.3d at 810.[9]

---

[9] Most of Boerschig's arguments regarding Rio Grande's affirmative defense of easement by estoppel are not framed within a specified standard of review. Boerschig contends generally that no competent evidence supports the judgment, and he ends several arguments by "alternatively" arguing that the evidence is "factually insufficient or against the great weight and preponderance of the evidence." In *Lion Copolymer Holdings, LLC v. Lion Polymers, LLC*, 614 S.W.3d 729, 732 (Tex. 2020) (per curiam), the Texas Supreme Court observed that an appellant had adequately briefed a factual sufficiency challenge where the appellant, *inter alia*, "listed the evidence that [the appellee] relied on to support its claim" against the appellant, and "subsequently weighed each of these pieces of evidence *against countervailing evidence*." *Id*. (emphasis added).

**B.**     **Applicable Law**

Three elements are necessary to create an easement by estoppel: (1) a representation communicated, either by word or action, to the promisee; (2) the communication was believed; and (3) the promisee relied on the communication. *Ingham v. O'Block*, 351 S.W.3d 96, 100 (Tex. App.—San Antonio 2011, pet. denied).

**C.**     **Arguments & Analysis**

**1.**     **Statute of Frauds, Statute of Conveyances, and the Recordation Statute**

Boerschig argues that the Dooley easement constitutes legally insufficient evidence of the first element of Rio Grande's easement by estoppel affirmative defense because allowing it to serve as some evidence violates the statue of frauds, the statute of conveyances, and the recordation statute. Boerschig argues that the Dooley easement is "void and unenforceable" under section 26.01(a)(2)[10] of the Texas Business and Commerce Code and sections 5.021[11] and 13.001[12] of the Texas Property Code because it "lacks a grantee, lacks a valid property description, is not signed

---

Boerschig's alternative, factual-sufficiency arguments do not *weigh* evidence. *Cf. id*. They essentially argue that the rules of law bar the court from giving weight to the Dooley easement. *City of Keller*, 168 S.W.3d at 810. Accordingly, Boerschig has inadequately briefed any factual sufficiency challenge and we will assess his argument through a legal sufficiency lens only. *Cf. Lion Copolymer Holdings*, 614 S.W.3d at 732.

[10] Section 26.01(a)(2) of the Texas Business and Commerce Code provides that "[a] promise or agreement described in Subsection (b) of this section is not enforceable unless the promise or agreement, or a memorandum of it, is . . . signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him." TEX. BUS. & COM. CODE ANN. § 26.01(a)(2).

[11] Section 5.021 of the Texas Property Code provides that "[a] conveyance of an estate of inheritance, a freehold, or an estate for more than one year, in land and tenements, must be in writing and must be subscribed and delivered by the conveyor or by the conveyor's agent authorized in writing." TEX. PROP. CODE ANN. § 5.021.

[12] Section 13.001 of the Texas Property Code, in its entirety, provides:

    (a)    A conveyance of real property or an interest in real property or a mortgage or deed of trust is void as to a creditor or to a subsequent purchaser for a valuable consideration without notice unless the instrument has been acknowledged, sworn to, or proved and filed for record as required by law.

    (b)    The unrecorded instrument is binding on a party to the instrument, on the party's heirs, and on a subsequent purchaser who does not pay a valuable consideration or who has notice of the instrument.

    (c)    This section does not apply to a financing statement, a security agreement filed as a financing statement, or a continuation statement filed for record under the Business & Commerce Code.

TEX. PROP. CODE ANN. § 13.001.

by a person with authority to sell property, is not sworn, proved, or acknowledged, and is not filed with the Kinney County property records." Boerschig, referencing Texas Rule of Civil Procedure 693[13] and section 65.001[14] of the Texas Civil Practice and Remedies Code, further argues that the statutory provisions that invalidate the Dooley easement "supersede the common law and equitable doctrines of easement by estoppel."

Rio Grande responds by arguing that "Texas law is clear that the doctrine of easement by estoppel is an exception to the statute of frauds." As support, Rio Grande references *Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196, 209 (Tex. 1962), wherein the Texas Supreme Court wrote that "[o]ne other exception to the statutes requiring a writing is the doctrine of estoppel in pais." Later in its opinion, the court explained that:

> While the above does not purport to list all of the situations, pertinent here, in which estoppel in pais has been applied to real estate to circumvent *the Statutes of Frauds and of Conveyances*, it does illustrate the rather narrow band of cases in which the doctrine has been applied.

*Id*. at 210 (emphasis added).

In *Storms v. Tuck*, 579 S.W.2d 447, 455 (Tex. 1979), the Texas Supreme Court observed:

> First, in the traditional case [asserting an easement by estoppel], there generally is no written grant of an easement; instead, there is a parol grant or a representation that an easement already exists. In the instant case, however, we are faced with an express written grant of an easement. Secondly, in the traditional case, the issue revolves around the very existence of the easement. By contrast, this case entails the scope of an easement; its existence is not questioned.

*Id*. Even though the facts in *Storms* did not fit the "traditional case," the Texas Supreme Court decided whether Tuck could claim an easement by estoppel based on the particular facts of the

---

[13] Rule 693 of the Texas Rules of Civil Procedure provides that "[t]he principles, practice and procedure governing courts of equity shall govern proceedings in injunctions when the same are not in conflict with these rules or the provisions of the statutes." TEX. R. CIV. P. 693.

[14] Section 65.001 of the Texas Civil Practice and Remedies Code provides that "[t]he principles governing courts of equity govern injunction proceedings if not in conflict with this chapter or other law." TEX. CIV. PRAC. & REM. CODE ANN. § 65.001.

case. *See id*. The Texas Supreme Court ruled that an easement did not exist because Storms made no representation regarding an easement, not because Tuck already owned an express easement. *See id*. at 452–53. Nothing in *Storms* forecloses an easement by estoppel merely because the party claiming one also claims to own an express easement. *See id*.; *see also Wiatrek v. Shimek*, No. 13-15-00604-CV, 2017 WL 2290158, at *6 (Tex. App.—Corpus Christi-Edinburg May 25, 2017, no pet.) (mem. op.) ("Under the facts of this case, we hold that Wiatrek's ownership of an express easement which now affords him adequate access to his land does not make an easement by estoppel unavailable.").

Boerschig fails to explain how his argument overcomes the holdings in *Drye* and *Storms*. Under these holdings and the persuasive guidance in *Wiatrek*, the jury may have considered the Dooley easement — even if it fails to satisfy the requirements of section 26.01(a)(2) of the Business and Commerce Code and sections 5.021 and 13.001 of the Property Code — in determining whether Rio Grande presented some evidence that a representation was communicated, either by word or action, to the promisee.

### 2. Dooley's Authority as Independent Executor and the Silence of Mary's Heirs

Boerschig argues that Dooley "was not the owner of the U-Bar" and that the Dooley easement "fails as a matter of law because it is not signed by the owner of the property." Boerschig highlights the portion of Mary's will wherein she instructs that, upon Jim's death, all of her interest in any real and personal property should be given to her sisters, brothers, nieces, and nephews. According to Boerschig, an order of the probate court was required before Dooley could convey an interest in Mary's real property to Rio Grande. Relatedly, Boerschig, referencing *Scott v. Cannon*, 959 S.W.2d 712, 721 (Tex. App—Austin 1998, pet. denied), argues that "an easement by estoppel must be based on an affirmative representation and not on mere silent acquiescence."

Rio Grande responds by arguing that, among other things, Boerschig's fixation on the contours of Dooley's legal authority, as dictated by Mary's will, to "sell" Mary's real property is misplaced in two respects. First, Rio Grande argues that the granting of an easement is not considered a "sale" of real property under Texas law. It references *Houston Community College System v. HV BTW, LP*, 589 S.W.3d 204, 216 (Tex. App.—Houston [14th Dist.] 2019, no pet.), wherein the court observed:

> Although an easement is an interest in land, board policy only required board approval of, in relevant part, "sales of real property." An easement is defined as "[a]n interest in land owned by another person, consisting in the right to use or control the land, or an area above or below it, for a specific limited purpose." *Easement*, BLACK'S LAW DICTIONARY (7th ed. 1999). An easement "does not give the holder the right to possess, take from, improve, or sell the land." *Id*. Accordingly, the grant of an easement is not a sale of real property. *See Severance v. Patterson*, 370 S.W.3d 705, 721 (Tex. 2012) ("An easement does not divest a property owner of title, but allows another to use the property for [a specific] purpose."); *Saturn v. Barnett*, No. A-16-CA-505-LY, 2016 WL 7392240, at *1 n.2 (W.D. Tex. Dec. 20, 2016) (noting easement gives right to cross property but gives "no other property rights"), *report and recommendation adopted,* No. 1:16-CV-00505-LY, 2017 WL 9850919 (W.D. Tex. Jan. 12, 2017).

*Hous. Cmty. Coll. Sys.*, 589 S.W.3d at 216. Rio Grande also references *Killam Ranch Properties, Ltd. v. Webb County*, 376 S.W.3d 146, 155 (Tex. App.—San Antonio 2012, pet. denied), wherein we observed the Texas Supreme Court rule that "[u]nlike a possessory interest in land, an easement is a nonpossessory interest that authorizes its holder to use the property for only particular purposes." *Id*. (quoting *Marcus Cable Assoc., L.P. v. Krohn*, 90 S.W.3d 697, 700 (Tex. 2002)). Second, Rio Grande argues that the conduct of Dooley and Mary's heirs in allowing Rio Grande to construct and maintain the original electric line since 1948 may be coupled with the Dooley easement as some evidence of a representation. It references *Wallace v. McKinzie*, 869 S.W.2d 592, 594 (Tex. App.—Amarillo 1993, writ denied), a case in which the jury found that the McKinzies had established an easement by estoppel for a road to their landlocked property over

the Wallaces' property. Rio Grande specifically references a passage in *Wallace* wherein the court assesses the evidence as showing:

> [F]or a period of over seventy years the McKinzies have used the road in question, for ingress and egress to their landlocked property. The Wallaces have never objected to the McKinzies' use of the road. Neither have the Wallaces ever told the McKinzies they could not use the road. Thus, through their permissive and acquiescing behavior, the Wallaces have engaged in representations by their conduct. This evidence alone constitutes legally sufficient evidence (*i.e.*, some evidence) to support the jury's finding that the Wallaces made a representation to the McKinzies that certain rights exist to use the Wallaces' property.

*Id*. at 596. The court noted that "A.D. McKinzie testified that he had a conversation about the roadway with Bert Wallace, and that he believed what he was told. After this conversation, A.D. McKinzie cut brush, tried to keep water from running down the road, and made improvements to his property." *Id*. at 595.[15] The court overruled the McKinzies' legal and factual sufficiency challenge. *Id*. at 596.

We rejected Boerschig's silent-acquiescence argument in *Robinson v. Riddick*, No. 04-15-00272-CV, 2016 WL 1238166, at *4 (Tex. App.—San Antonio Mar. 30, 2016, no pet.) (mem. op). In *Robinson*, we observed that *Storms*, 579 S.W.2d at 452–53, and *Scott*, 959 S.W.2d at 721, "recognize [that] the doctrine of equitable estoppel is a fact specific doctrine to be decided on a case-by-case basis." *Robinson*, 2016 WL 1238166, at *4. We further observed that "[n]umerous courts have recognized that in cases of easement by estoppel, permissive and acquiescing behavior by the owner of a servient estate *can* constitute actual representations." *Id*. (citing *Ross v. Womack*,

---

[15] The dissenting opinion in *Wallace* noted that:

> In support of the theory of easement by estoppel, A.D. McKinzie testified that he had a conversation with Bert Wallace, the Wallace children's grandfather, about the roadway; but, by using a motion in limine and timely trial objections, the Wallaces prevented the jury from hearing the words of the conversation which, the McKinzies candidly concede, were hearsay. [Neither the time nor the place of the conversation is shown in the record.]

*Wallace*, 869 S.W.2d at 598 (Reynolds, C.J., dissenting) (footnote in brackets).

No. 13–08–002–CV, 2008 WL 4822208, at *5 (Tex. App.—Corpus Christi–Edinburg Nov. 6, 2008) (mem. op.); *Wallace*, 869 S.W.2d at 596) (emphasis in original).

We respectfully decline Boerschig's contention that the rules of law barred the jury from giving weight to the Dooley easement in considering the first element of Rio Grande's easement by estoppel affirmative defense. Assuming, without deciding, that Dooley, in 1947, lacked the proper legal authority to "sell" real property from Mary's estate or even grant an easement over such real property, the jury may have considered the Dooley easement as a representation from not only the independent executor of Mary's estate, but also one of her heirs. The representation in the Dooley easement coupled with the acquiescing conduct of Dooley and the rest of Mary's heirs is some evidence of the first element of Rio Grande's easement by estoppel affirmative defense.[16]

### 3. Belief of Representation

Boerschig argues that Rio Grande presented no evidence that it believed the representation in the Dooley easement in order to satisfy the second element of Rio Grande's affirmative defense of easement by estoppel. *See Ingham*, 351 S.W.3d at 100 (listing second element as "communication was believed"). Boerschig emphasizes Quiroz's acknowledgment that there was a delay in tendering to Boerschig copies of the Dooley easement in response to his pre-suit correspondence as "evidence . . . that [Rio Grande] did not know of the Dooley [easement's]

---

[16] We note that in *Smith v. Reid*, No. 04-13-00550-CV, 2015 WL 3895465, at *7 (Tex. App.—San Antonio June 24, 2015, pet. denied) (mem. op.), we applied the rule that, in the absence of a vendor/vendee relationship, an easement by estoppel may not be predicated upon silence or passive acquiescence *alone*. *Smith* and *Robinson* may be reconciled because, even though there is no vendor/vendee relationship between Dooley and Rio Grande, the Dooley easement is some evidence of more than silent acquiescence. We also note that one of Boerschig's arguments is that he "has standing to challenge the validity of the Dooley Document." Our analysis assumes without deciding that Boerschig may challenge the validity of the Dooley easement as some evidence of Rio Grande's easement by estoppel affirmative defense.

existence until [it] found it in [its] files in 2012." Rio Grande responds by highlighting Quiroz's testimony that:

Q.     Okay. Now, pulling up [the Dooley easement], is it common for you to see deeds of this nature for this historical time period?

A.     Yes, it is.

Q.     Okay. And why is that?

A.     These are — these are old documents. I mean, we take really — we rely on them, because the signature that — we need to have this on file before construction begins. And their signature gives us permission to do what it is they asked us to do.

Q.     You need to have it in your files, is that —

A.     Yes.

Q.     — what you're saying?

A.     Uh-huh.

Q.     Okay. Now, did you locate other easements when you were in the process of your search for the appropriate easement, other easements for the Boerschig property?

A.     For the Boerschig property, yes, we did. Uh-huh.

Q.     Okay. And did you provide those to Mr. Boerschig?

A.     Yes, we did.

Q.     Why did you provide all those easements to Mr. Boerschig?

A.     Because we — I'm familiar with Mr. Boerschig, and we weren't going to just — we weren't trying to hide anything. When he asked for it, I gave him — we gave him everything that he was asking for. We wanted him to see exactly what we were seeing. And that's pretty much it.

Q.     Okay. Why does the process to — why did the process to locate the appropriate easement take a few weeks to a month?

A.     Because there's just a lot of easements to go through. I mean, we're — we're manually having to go through all these easements, and several people were helping with this — this research.

Rio Grande argues that Quiroz's testimony and the circumstances surrounding the construction of the upgraded electric line are some evidence that the electric line was constructed in reliance upon the Dooley easement. Rio Grande references *Wallace*, 869 S.W.2d at 596, in support of its argument that "the facts related to conduct sufficient to establish an easement by estoppel can also support reliance." We understand Rio Grande's argument to imply that evidence of reliance (the third element) necessarily includes belief (the second element). *See Sands v. Lemmerhirt*, 262 S.W. 125, 128 (Tex. Civ. App.—Dallas 1924, no writ) (stating that reliance upon representations necessarily implies a belief in their truth). Boerschig presents us with no reason to deviate from our sister court's holding in *Wallace*. Quiroz's testimony, noting construction and maintenance of the original electrical line, and the Dooley easement are some evidence on which the jury may have found that Rio Grande both believed in and relied on the Dooley easement.

### 4. Equitable Arguments

#### a. Innocent Party & Subsequent Purchaser

In Boerschig's "innocent party" argument, he argues:

> [Rio Grande] claims that the Court should grant it an easement by estoppel because it chose to rely on the invalid Dooley [easement] rather than negotiate an easement with Boerschig. The innocent party in this lawsuit is Boerschig, who did everything he had a duty to do. . . Similar to [a neighboring landowner], [Rio Grande] could have obtained payment for an easement across the U-Bar from Lone Star[, a natural gas pipeline operator,] but chose not to make that request.

Boerschig references *Vrazel v. Skrabanek*, 725 S.W.2d 709, 711 (Tex. 1987), and *Storms*, 579 S.W.2d at 452, in support of his innocent party argument. In Boerschig's "subsequent purchaser" argument, he argues that "[a]n easement by estoppel does not apply to a subsequent purchaser for value without notice." Boerschig references *Goodenberger v. Ellis*, 343 S.W.3d 536, 541 (Tex. App.—Dallas 2011, pet. denied), and *Lakeside Launches, Inc. v. Austin Yacht Club, Inc.*, 750 S.W.2d 868, 873 (Tex. App.—Austin 1988, writ denied), in support of his subsequent purchaser

argument. Specifically, Boerschig argues that he "knew of the existence of the original power line, but that does not constitute notice to Boerschig that [Rio Grande] claimed the right to remove the 17-pole original power line and replace it with the 60-pole New Power Line."

Boerschig fails to explain how *Vrazel* or *Storms* support his "innocent party" argument, how it is tethered to his broader sufficiency challenges, and what relief, if any, it affords. Liberally construing Boerschig's "innocent party" argument, it may be read to assail the third element of Rio Grande's affirmative defense of easement by estoppel — that Rio Grande relied on the communication. *Ingham*, 351 S.W.3d at 100. However, for the reasons explained above, the record includes legally sufficient evidence as to the third element of reliance.

Boerschig's subsequent purchaser argument is equally unavailing. Rio Grande responds by emphasizing that *Lakeside* has been distinguished by *Cleaver v. Cundiff*, 203 S.W.3d 373, 378 (Tex. App.—Eastland 2006, pet. denied), wherein the court noted that "[i]n *Lakeside*, there was nothing to give the purchaser notice that prior owners of the adjoining land may have extended a floating dock beyond the ramp. In this case, the use of the road was open and obvious; and the road continued into the adjoining land." *Cleaver* is more apt than *Lakeside* because the electric poles and lines are more open and obvious, akin to the road in *Cleaver*, than "the right to anchor and float a commercial boat-dock below the 670–foot–contour line." *Compare Cleaver*, 203 S.W.3d at 378, *with Lakeside Launches, Inc.*, 750 S.W.2d at 872.

### b. Vendor/Vendee Relationship

As we understand Boerschig's vender/vendee relationship argument, he contends that because Rio Grande did not purchase an easement from Dooley, the vendor/vendee rule establishes that Rio Grande's "claim of easement by estoppel fails as a matter of law." Boerschig also argues that Rio Grande claims only "an easement in gross," which is personal and attaches only to the grantee.

In *Smith v. Reid*, No. 04-13-00550-CV, 2015 WL 3895465, at *7 (Tex. App.—San Antonio June 24, 2015, pet. denied) (mem. op.), we held that "[a]n easement by estoppel may not be predicated upon silence and passive acquiescence alone" in the absence of a vendor/vendee relationship. *See id*.; *see also LaTaste Enters. v. City of Addison*, 115 S.W.3d 730, 736 (Tex. App.—Dallas 2003, pet. denied) (holding that "[m]ere passive acquiescence to use does not create an easement by estoppel where there is no vendor-vendee relationship between the owners of the alleged servient and dominant estates"); *but see Robinson*, 2016 WL 1238166, at *4 ("Numerous courts have recognized that in cases of easement by estoppel, permissive and acquiescing behavior by the owner of a servient estate *can* constitute actual representations.").

However, if there is more than silent acquiescence, then the lack of a vendor/vendee relationship will not preclude a party from maintaining an easement by estoppel affirmative defense. *See Hazzani, LLC v. Richardson Bus. Ctr., Ltd.*, No. 05-18-00346-CV, 2019 WL 3244175, at *6 (Tex. App.—Dallas Jul 19, 2019, no pet.) (mem. op.) (holding that it need not address whether a vendor/vendee relationship is required to establish an easement by estoppel because the alleged servient estate owner did not merely passively acquiesce to the claimant of an alleged easement by estoppel's use of the common access drive, but also actively participated in making repairs to the common access driveway almost immediately after purchasing the property).

Boerschig's vendor/vendee relationship argument fails because the Dooley easement coupled with the heirs' acquiescence in the construction of the original electrical line on the U-Bar and its maintenance since 1948 is some evidence of a representation, which is more than silent acquiescence. Moreover, Quiroz's testimony is some evidence that Rio Grande claimed an easement by estoppel that ran with the land.

### c. The Dooley Easement's Scope, Rio Grande's Initial Expenditure, and the Upgraded Electric Line

Boerschig argues that whatever rights the Dooley easement may have conveyed, those rights are limited to only the initial expenditure used to construct the original electric line. Boerschig references *F. J. Harrison & Co. v. Boring & Kennard*, 44 Tex. 255, 267–68 (Tex. 1875), for its observation that:

> The owner of land may create an easement by a parol agreement or representation which has been so acted on by others as to create an estoppel en pais. As where he has by parol agreement granted a right to such easement in his land, upon the faith of which the other party has expended moneys which will be lost and valueless if the right to enjoy such easement is revoked, equity has enjoined the owner of the first estate from preventing the use of it.

*Id*. Boerschig then argues:

> To the extent that [Rio Grande] ever expended any money on the faith of a representation in the Dooley [easement], such money could only have been spent on the original power line, not the New Power Line. There is no risk of the money spent on the original power line being lost or valueless because [Rio Grande] voluntarily removed the original power line. The New Power Line was not constructed upon the faith of any parol agreement to an easement across the U-Bar, therefore the doctrine of easement by estoppel cannot apply to the New Power Line.

Rio Grande responds by highlighting that the Dooley easement granted Rio Grande the right "to place, construct, operate, repair, maintain, relocate and replace" electric lines on the U-Bar. Rio Grande further argues that the Dooley easement "does not limit the number of poles that might be placed within its confines. It does not designate the precise location where any electric line must be constructed or confine the easement to any specific route."

Under Boerschig's reasoning, utilities running along an easement that is established by estoppel may never be repaired, maintained, or upgraded because an easement by estoppel is limited to only the original expenditure. Boerschig's focus on the global (and early) rationale for recognizing an easement by estoppel in *F. J. Harrison* does not support the initial expenditure rule that he seeks to pull out of it. Rio Grande presented legally sufficient evidence — through the

provisions in the Dooley easement and the conduct of Dooley and Mary's heirs — to support the judgment.

## D. Conclusion

Based on the foregoing, we hold the evidence is legally sufficient to support the trial court's judgment recognizing Rio Grande had an easement by estoppel "across the Power Line Route." Accordingly, Boerschig's first issue, as reconstrued, is overruled.

## III. CHARGE ERROR

In what we construe as Boerschig's second issue, he argues that the trial court abused its discretion in refusing an instruction accompanying Question No. 4 in the jury charge. Question No. 4 asked:

Did the construction of The Power Line Upgrade[17] across John Boerschig's property exceed the scope of the prescriptive easement or easement by estoppel that you found in response to Question 2 or 3?

The trial court submitted an instruction with Question No. 4, but not the instruction that Boerschig requested. A comparison reveals:

| Requested | Submitted |
| --- | --- |
| The owner of easement cannot change or alter the character or extent of the easement, nor subject the landowner to an additional burden. | The scope of an easement created by prescription or estoppel is fixed by the use through which it was created. |

The jury answered "[n]o" to Question No. 4.

## A. Standard of Review

We review a trial court's decision to submit or refuse a particular instruction under an abuse of discretion standard of review. *In re V.L.K.*, 24 S.W.3d 338, 341 (Tex. 2000). A trial court

---

[17] Earlier in the jury charge, it defined "The Power Line Upgrade" as "a series of poles, wires and attachment thereto that [Rio Grande] installed across the Power Line Route after September 6, 2012."

abuses its discretion in crafting a jury charge if it acts in an arbitrary or unreasonable manner, or if it acts without reference to guiding rules or principles. *Wal-Mart Stores Tex., LLC v. Bishop*, 553 S.W.3d 648, 673 (Tex. App.—Dallas 2018, pet. granted, judgm't vacated w.r.m.) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). If a jury charge is legally correct, the trial court has broad discretion regarding how to submit the issues, including the wording of questions, definitions, and instructions. *Cont'l Cas. Co. v. Baker*, 355 S.W.3d 375, 382 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (op. on reh'g).

We do not reverse for jury charge error in the absence of harm. *Lone Star Gas Co. v. Lemond*, 897 S.W.2d 755, 756–57 (Tex. 1995) (per curiam). For harm to result, the error must probably cause the rendition of an improper judgment. TEX. R. APP. P. 44.1(a)(1) ("No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of . . . probably caused the rendition of an improper judgment."); *Friday v. Spears*, 975 S.W.2d 699, 700 (Tex. App.—Texarkana 1998, no pet.) ("Error in the jury charge is reversible only if it probably caused the rendition of an improper verdict."). We review the entire record to determine whether the submission or refusal to submit an instruction probably resulted in an improper judgment. *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 756 (Tex. 1998).

**B.      Analysis**

Boerschig references *Knox v. Pioneer Natural Gas Co.*, 321 S.W.2d 596, 601 (Tex. Civ. App.—El Paso 1959, writ ref'd n.r.e.), in support of his second issue. In *Knox*, the court observed that "the extent of an easement created by prescription is fixed by the use through which it was created . . . ." *Id*. This is the instruction that the trial court submitted. Boerschig also references *Stout v. Christian*, 593 S.W.2d 146, 150 (Tex. Civ. App.—Austin 1980, no writ), for its observation that, "[t]he owner of the dominant estate cannot change or alter the character or extent

of the easement, nor subject the servient tenement to an additional burden." This is the instruction that Boerschig requested and that the trial court refused.

Boerschig fails to specify whether the trial court abused its discretion by (1) including the submitted instruction *instead of* his requested instruction (the "substitution scenario") or (2) refusing to include his proposed instruction *in addition to* the instruction it submitted (the "additional scenario"). If Boerschig argues the substitution scenario, he fails to explain how the variance between the requested and submitted instruction constitutes an abuse of discretion. If Boerschig argues the additional scenario, he fails to reference any legal authority supporting the proposition that the trial court abused its discretion by not submitting two similarly worded jury instructions for Question No. 4. The trial court has broad discretion regarding how to submit a jury instruction. *Cont'l Cas. Co.*, 355 S.W.3d at 382. Boerschig has provided no argument or authority to suggest that his requested phrasing is meaningfully different than that used by the trial court, and the trial court's instruction is supported by precedent. *See Knox*, 321 S.W.2d at 601. Therefore, we hold Boerschig has not established any abuse of discretion in the trial court's rejection of his proposed jury instruction, and we overrule Boerschig's second issue.

### IV. ATTORNEY'S FEES

In what we construe as Boerschig's third issue, he argues that the trial court erred in awarding attorney's fees to Rio Grande because: (1) Rio Grande's easement by estoppel affirmative defense "presents no new controversy, but exits solely to pave the way to an award of attorney's fees"; (2) Rio Grande failed to segregate its attorney's fees; (3) Rio Grande sought attorney's fees that are not related to the instant lawsuit; (4) Rio Grande is not the prevailing party; (5) an award of attorney's fees to Rio Grande is not "equitable and just"; and (6) Rio Grande's attorney's fee records were not timely produced during the discovery process.

**A.      Standard of Review**

"We review a trial court's award of attorney's fees for an abuse of discretion." *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 850 (Tex. 2018).

**B.      No New Controversy & Prevailing Party**

In support of Boerschig's no new controversy argument, he references *Howell v. Mauzy*, 899 S.W.2d 690, 705–06 (Tex. App.—Austin 1995, writ denied), a 1995 election contest case. Boerschig emphasizes *Howell*'s pronouncement that a "counterclaim that presents no new controversy, but exists solely to pave the way to an award of attorney's fees is improper." *Id*. at 706.

Rio Grande referenced *Templeton v. Dreiss*, 961 S.W.2d 645, 671 (Tex. App.—San Antonio 1998, writ denied), in its "application for attorney's fees" that it filed in the trial court. In *Templeton*, we held:

> The [UDJA] provides that the trial court may award reasonable and necessary attorney's fees as are equitable and just. The award of attorney's fees is not limited to the plaintiff or the party affirmatively seeking declaratory relief. *When a claimant has properly invoked the declaratory judgment statute, either party may plead for and obtain attorney's fees.*

*Id*. (citation omitted) (emphasis added); *see also First City Nat'l Bank v. Concord Oil Co.*, 808 S.W.2d 133, 138–39 (Tex. App.—El Paso 1991, no writ) (holding that when either the plaintiff or plaintiff and defendant seek declaratory relief, attorney's fees may be awarded to either party); *Ritchie v. City of Fort Worth*, 730 S.W.2d 448, 451 (Tex. App.—Fort Worth, writ ref'd n.r.e.) (holding the same); *First Nat'l Bank v. John E. Mitchell Co.*, 727 S.W.2d 360, 363 (Tex. App.—Amarillo 1987, writ ref'd n.r.e.) (stating that when the plaintiff seeks declaratory relief, the trial court may award attorney's fees to any party). Boerschig fails to reconcile *Howell* with *Templeton*. Relatedly, he fails to explain how the trial court abused its discretion by following our opinion in *Templeton*. Accordingly, Boerschig's no new controversy contention is unavailing.

Similarly, Boerschig's contention that the trial court abused its discretion by awarding Rio Grande attorney's fees because it is not the prevailing party is also unavailing. "Under the UDJA, a trial court may, within its discretion, award attorney's fees to the prevailing *or non-prevailing* party or decline to award attorney's fees to either party, regardless of which party sought the declaratory relief." *HMT Tank Service LLC v. American Tank & Vessel, Inc.*, 565 S.W.3d 799, 813 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (emphasis added).

## C. Fee Segregation & Unrelated Charges

Boerschig argues that "[t]he jury found against [Rio Grande] on its affirmative defenses of a written easement and an easement by prescription, therefore any fees solely attributable to its claim for a written easement and an easement by prescription must be segregated." Boerschig goes on to argue:

> The time entries submitted in [Rio Grande's] application for attorney fees include over 100 entries for summary judgment – none of which are recoverable. Similarly, there are several entries that are not summary judgment related that clearly should have been segregated, including, but not limited to: a) 8/21/15 entry for a trial brief on constructive knowledge, which only applies to the claim of written easement; b) 2/9/16 entry on research regarding breach of contract and tortious interference; c) 2/10/16 entry on research regarding cases interpreting easements as contracts; d) 2/15/16 entry on drafting trial memorandum on deed validity; e) 2/18/16 entry on research on cases regarding Property Code Section 13; f) 2/18/16 entry on research regarding constructive notice; and g) on 2/15/16 there are time entries for the deposition of Rick Hagler, who was deposed solely because [Rio Grande] stated at the pretrial hearing that he would be a witness at trial, however RGEC never called him to testify. This is not an exhaustive list of entries that should have been segregated but is the result of a cursory review. None of these entries have any bearing on the claim of easement by estoppel and therefore should have been segregated and removed. Because [Rio Grande] failed to segregate out fees related to claims for which fees are not recoverable, the Court should reverse the award of fees.[18]

---

[18] We note that Boerschig fails to provide record citations for Rio Grande's time entries. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citation to authorities and to the record.").

Boerschig references *A.G. Edward & Sons, Inc. v. Beyer*, 235 S.W.3d 704, 710 (Tex. 2007), and

*Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006), in support of his argument.

In *Tony Gullo Motors*, the Texas Supreme Court wrote:

> [W]e reaffirm the rule that if any attorney's fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees. Intertwined facts do not make tort fees recoverable; it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated.

212 S.W.3d at 313–14.

Rio Grande responds by arguing that "[i]n this case, Boerschig's argument has no merit because the claims and defenses are hopelessly intertwined. It would be difficult, if not impossible to carve out depositions or trial preparation by the type of claim in this case." Rio Grande emphasizes that its total fees in the trial court were $323,911.44, that it sought only seventy-five percent of this amount, and that the trial court ultimately awarded it $161,955.22. Rio Grande specifically argues that "the fact that Boerschig disputes a handful of entries submitted by Rio Grande is irrelevant. Such entries can and should be considered by the Court to be part of the entries excluded by Rio Grande and/or the trial court, and thus irrelevant for purposes of the appeal."

Boerschig does not delineate whether the time entries that he complains of on appeal were included in the portion of Rio Grande's attorney's fees that the trial court elected not to award. Therefore, assuming without deciding that Rio Grande was obligated to segregate its request for attorney's fees and prohibited from recovering "unrelated attorney's fees," we cannot discern whether such prohibited attorney's fees were those that the trial court elected not to award. Accordingly, we cannot say that the trial court abused its discretion.

**D.      Rule 193.6 Discovery Complaint**

Boerschig argues:

the only attorney fees records produced by [Rio Grande] in response to discovery requests were completely redacted with regard to time entries. Only after the motion for judgment hearing on April 15, 2016 did [Rio Grande] finally produce time entries reflecting the tasks performed. The deadline for supplementing discovery is 30 days prior to trial, which was January 17, 2016. [Texas Rule of Civil Procedure] 193.5(b). The consequence of failing to timely supplement discovery responses is exclusion of the evidence. [Texas Rule of Civil Procedure] 193.6(a). Because [Rio Grande] did not timely provide its time entries in response to discovery, the District Judge erred in awarding fees and the judgment of fees to [Rio Grande] should be reversed.

Rio Grande responds by arguing, among other things, that:

the time for Boerschig to complain about redacted invoices was prior to trial, not afterwards. Any such complaints have been waived. Further, Rio Grande did, in fact, produce complete, un-redacted invoices so that Boerschig could respond to Rio Grande's application for fees. Boerschig had no legitimate need to know the details of Rio Grande's counsel's work until after trial, when attorneys' fees became an issue to be litigated. Therefore, Boerschig was not prejudiced by the failure to produce un-redacted fee statements prior to that point.

"A party who claims that material or information responsive to written discovery is privileged may withhold the privileged material or information from the response." TEX. R. CIV. P. 193.3(a). "After receiving a response indicating that material or information has been withheld from production, a party seeking discovery may serve a written request that the withholding party identify the information and material withheld." *Id*. at R. 193.3(b).

Boerschig does not complain about the timeliness of Rio Grande's exchange of *redacted* attorney's fee time entries during the discovery process. Boerschig's argument assumes that Rule 193.5 obligated Rio Grande to "supplement[]" the redacted entries, which Rio Grande implies contained privileged statements, with unredacted entries. However, Rule 193.5 exists within a discovery framework that includes Rule 193.3. Boerschig's singular reliance on Rule 193.5 fails to explain Rule 193.3's impact, if any, on our analysis. Without more, we cannot hold that the

trial court abused its discretion in considering Rio Grande's unredacted time entries.  *See* TEX. R. APP. P. 38.1(i).

Boerschig's third issue, as reconstrued, is overruled.

## V. CONCLUSION

We affirm the trial court's judgment.

Rebeca C. Martinez, Chief Justice