# Supreme Court of Texas

====

No. 24-0213

====

John P. Boerschig,

*Petitioner*,

v.

Rio Grande Electric Cooperative, Inc.,

*Respondent*

====

On Petition for Review from the
Court of Appeals for the Fourth District of Texas

====

**Argued November 6, 2025**

JUSTICE BUSBY delivered the opinion of the Court, in which Justice Devine, Justice Young, Justice Sullivan, and Justice Hawkins joined.

JUSTICE HAWKINS filed a concurring opinion.

JUSTICE BLAND filed a dissenting opinion, in which Chief Justice Blacklock, Justice Lehrmann, and Justice Huddle joined.

In this trespass suit, the purchaser of a ranch challenges (1) whether an electric cooperative holds an easement by estoppel for its distribution line that crosses the ranch and, if so, (2) whether the cooperative's upgrade of the line—which tripled the number of poles and

nearly doubled the number of wires—exceeded the scope of that easement. We hold that legally sufficient evidence supports the jury's finding of an easement by estoppel: an unrecorded writing by a prior owner represented that an easement was being conveyed, the cooperative detrimentally relied on the representation in constructing the original line, and the purchaser knew about the line when he bought the ranch.

We also hold, however, that the upgraded line exceeds the scope of this easement as a matter of law. The record shows that the purchaser had no notice of the unrecorded writing when he bought the property and that the investment the cooperative made in reliance on the writing was the line as it existed at that time. The cooperative explained that the upgrade would serve a new customer and a new substation; it offered no evidence that the upgrade was reasonably necessary to continue its existing use of the line. We therefore reverse the court of appeals' contrary judgment, render judgment for the purchaser on his trespass claim, and remand to the trial court for further proceedings.

## BACKGROUND

In 1945, ranchers from Kinney, Val Verde, Edwards, Maverick, and Uvalde counties formed the non-profit Rio Grande Electric Cooperative to provide electricity to members in rural areas. Rio Grande has condemnation authority and has expanded significantly over the decades, currently serving eighteen counties in Texas and two in New Mexico.

In 1947, Rio Grande acquired a document entitled "Right of Way Easement" signed by Ogden Dooley, the executor of the estate of Mary Clamp. The document gave an unspecified corporation the right "to place, construct, operate, repair, maintain, relocate and replace" "an electric transmission or distribution line or system" on 5,684 acres of the Clamp estate as described by road boundaries. The document provides that "at pole locations, only single pole and appurtenances will be such as to form the least possible interference to farm operations, so long as it does not materially increase the cost of construction." Rio Grande never recorded the Dooley Document in the real property records.

Shortly thereafter, Rio Grande constructed an electric distribution line crossing about 1.6 miles of the property described in the Dooley Document. The line consisted of between seventeen and twenty wooden poles, each rising thirty feet and carrying four wires on a single crossarm. Rio Grande described the line as a "backbone feeder" that brings electricity from a nearby substation to "roughly 1,000 consumers."

In 2002, petitioner John Boerschig bought the 6,397-acre U-Bar Ranch in Kinney County, which included the property crossed by Rio Grande's electric line. He observed this line along with another, and the lines were marked on a survey prepared in connection with the transaction. Boerschig began monitoring Rio Grande's activities after a dispute in 2006 regarding Rio Grande's removal of trees along another line.

In 2012, Rio Grande notified Boerschig that it planned to "bulldoz[e] . . . portion[s] of the easement" and "upgrade the existing

feeder situated on a portion of [Boerschig's] property." Rio Grande explained that the project would involve "replacing and adding to the line" and moving it "approximately 15 feet southwest." The purpose of the upgrade was to provide electric service to a new customer—a Lone Star Gas pipeline compressor station—and to connect a new electric substation Rio Grande planned to build to provide redundancy and accommodate future demand growth. Lone Star Gas paid for the upgrades to the line.

Boerschig contended that he did not receive the letter and only learned of the project when a bulldozer started clearing his property several months later. Boerschig asked Rio Grande for a copy of the applicable easement. Rio Grande produced other express easements but not one that covered the route at issue. Boerschig sued Rio Grande for trespass. After Boerschig obtained a temporary restraining order, the parties agreed that construction would cease while the dispute was resolved.

Rio Grande later filed a counterclaim seeking a declaratory judgment that Rio Grande had a valid express easement or, in the alternative, had obtained a prescriptive easement or an easement by estoppel. Rio Grande attached the Dooley Document to its counterclaim, which Boerschig alleges was the first time he became aware of that document. A Rio Grande witness explained that the Dooley Document was discovered in its files long after the dispute began.

Rio Grande also alleged that Boerschig had interfered with its easement and with potential contracts to reroute the line through the town of Brackettville. Boerschig offered Rio Grande the opportunity to

4

build a line alongside an existing transmission line elsewhere on his property owned by another company, but Rio Grande refused.

Boerschig eventually agreed not to oppose continued construction but reserved his pending trespass claim that the upgrade was not authorized by a valid and enforceable easement. In light of the ongoing dispute, Rio Grande decided to keep the line on the existing footprint of the original line instead of moving it to the southwest.

In 2014, Rio Grande finished construction of its new line. Where the old line had been carried by no more than twenty poles rising about thirty feet above the ground and carrying four wires on one crossarm, the new line uses sixty poles rising thirty-seven feet and carrying seven wires on two crossarms. The new poles are constructed of a fiberglass composite made to look like the old wooden poles.

The case went to a jury trial. Boerschig testified that the new line interfered with his farming, ranching, and hunting. His tractors pull 30-foot-wide seed drills, sometimes at night, and the added poles were much closer together and thus more difficult to navigate. He stopped haying in one field where a single pole was replaced with six poles. And Boerschig's foreman testified that he saw cows colliding with the poles and fewer deer congregating around them.

Boerschig asserted that the new line also decreased the value of his property. He called the new poles "an eyesore" and claimed that "the folks that are buying [ranches], like from Houston, they don't want to come out and see a bunch of power lines, a bunch of gas lines, a bunch of telephone lines. . . . They want to see just . . . wide-open ranch space."

The jury viewed videos of the power line route taken before and after the upgrades. The videos showed that Boerschig planted his fields on either side of the line. In non-cultivated areas, the land traversed by the line is brush and heavy vegetation frequented by deer. The Rio Grande employee who took the post-upgrade video testified he saw nothing in the new line that would interfere with hunting, farming, or ranching.

In a 10-2 verdict, the jury answered "no" to questions regarding whether Rio Grande had an enforceable written easement or a prescriptive easement by adverse possession. But the jury found in response to Question 3 that Rio Grande held an easement by estoppel:

> Does RGEC have an easement by estoppel across The Power Line Route [defined as the location of the power line on Boerschig's property]?
>
> To establish an easement by estoppel, a landowner or his predecessor must have made a representation, either by words or conduct, that was believed by RGEC and upon which RGEC relied.
>
> . . .
>
> Answer: *Yes*

Then, in answer to Question 4, the jury failed to find that Rio Grande's upgrade exceeded the scope of that easement:

> Did the construction of The Power Line Upgrade across John Boerschig's property exceed the scope of the prescriptive easement or easement by estoppel that you found in response to Question 2 or 3?
>
> The scope of an easement created by prescription or estoppel is fixed by the use through which it was created.

6

. . .

Answer: *No*

The jury was instructed not to answer subsequent questions regarding Boerschig's trespass claim if it answered Question 4 "no."

After a multi-year delay, the trial court rendered judgment for Rio Grande on the jury's verdict. The judgment declared that Rio Grande "had an easement by estoppel across the Power Line Route" and "that the construction of the Power Line Upgrade across [Boerschig's] Property did not exceed the scope of its easement by estoppel."

Boerschig appealed, arguing that the evidence supporting an easement by estoppel is legally insufficient. The court of appeals affirmed, holding that the jury could consider the Dooley Document in determining whether a representation was made. 719 S.W.3d 327, 337, 347 (Tex. App.—San Antonio 2024). The court concluded that Rio Grande's testimony that it had relied on documents like the Dooley Document, as well as "the circumstances surrounding the construction of the upgraded electric line," supported the jury's finding of reliance on the representation that an easement existed along the route. *Id.* at 340. The court also held sufficient evidence supported the judgment regarding the jury's failure to find that Rio Grande's upgrade exceeded the scope of the easement. *Id.* at 342. In this Court, Boerschig again challenges the jury's findings.

ANALYSIS

## I. Sufficient evidence supports the jury's finding of an easement by estoppel.

We begin with Boerschig's challenge to the jury's finding of an easement by estoppel, which he contends is not supported by legally sufficient evidence.[1]   Easements are nonpossessory interests in land that authorize the holder to use another's property—the burdened or servient estate—only for a particular purpose.  *Lance v. Robinson*, 543 S.W.3d 723, 736 (Tex. 2018); *Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196, 207 (Tex. 1962).  "[I]f a particular purpose is not provided for in the [easement], a use pursuing that purpose is not allowed."  *Marcus Cable Assocs. v. Krohn*, 90 S.W.3d 697, 701 (Tex. 2002).

Because easements are real property interests, the statutes of frauds and conveyances generally require a signed and recorded writing to evidence the creation of an easement.  *Copano Energy, LLC v. Bujnoch*, 593 S.W.3d 721, 727 (Tex. 2020); *see ConocoPhillips Co. v. Hahn*, 704 S.W.3d 515, 530 (Tex. 2024).  By ensuring that contracts concerning land are not "left to slippery memory," these requirements remove uncertainty, guard against fraudulent claims, and reduce litigation.[2]

---

[1] In reviewing a legal sufficiency challenge, we examine the evidence in the light most favorable to the verdict, indulge every reasonable supporting inference, and disregard contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 822, 827 (Tex. 2005).

[2] *Rankin v. Naftalis*, 557 S.W.2d 940, 943 (Tex. 1977) ("The Texas Legislature on successive occasions from the early days of the Republic has expressed its intent that contracts concerning lands must not, as Lord Coke

8

We have explained, however, that the owner of the burdened estate may be estopped to deny the existence of an easement despite the lack of a conforming writing. *See Storms v. Tuck*, 579 S.W.2d 447, 454 (Tex. 1979). To prove the existence of an easement by estoppel, the holder must show (1) the owner of the burdened estate represented that an easement would be conveyed, (2) the holder believed the representation, and (3) the holder relied on the representation to its detriment. *Id.* at 452.[3] Representation and belief are fixed at the time of transfer. But if the reliance terminates, so does the estoppel.[4] We address the scope of such an easement and its effect on subsequent purchasers of the burdened estate in Part II.

The jury had before it evidence that the Dooley Document granted an easement for an electric line, that Rio Grande's practice was to build lines only where it believed it had an easement covering the route, and that Rio Grande in fact built the line in 1947 and maintained it without

expressed it, 'be left to slippery memory' but must be reduced to writing."); *see also Givens v. Dougherty*, 671 S.W.2d 877, 878 (Tex. 1984) ("The purpose of the Statute of Frauds is to remove uncertainty, prevent fraudulent claims, and reduce litigation.").

[3] Some courts refer to this type of easement as an easement by implied dedication when the representation concerns a dedication for public use. *E.g.*, *Scott v. Cannon*, 959 S.W.2d 712, 718-19 (Tex. App.—Austin 1998, pet. denied).

[4] *See Drye*, 364 S.W.2d at 211 (observing that, to run with the land, a promise must benefit the promisee in the physical use of the land, and quoting RESTATEMENT (FIRST) OF PROP. § 537 cmt. f (1944)); *see also Goodenberger v. Ellis*, 343 S.W.3d 536, 541 (Tex. App.—Dallas 2011, pet. denied) ("Once created, an easement by estoppel is binding upon successors in title if reliance upon the existence of the easement continues.").

9

objection for sixty-five years. As the court of appeals held, the jury could have credited this evidence in answering "yes" to Question 3.

At trial, Boerschig did not introduce evidence to the contrary, such as contesting that representations were made or that Rio Grande did not believe them or rely on them. Boerschig argued instead, as he does on appeal, that the Dooley Document is not competent evidence of such a representation because it is not a valid written easement.

We disagree. A writing that fails as an express easement can be some evidence supporting the representation element of an easement by estoppel.[5] The function of such easements is to preserve reliance interests for uses of land intended by the parties but not supported by formal written documentation.[6] Thus, easements by estoppel arise only in cases in which an express easement fails to cover the use at issue. An easement that the parties intended but failed to perfectly memorialize is no less relevant than an easement the parties intended to memorialize

---

[5] In the view of the Restatement, writings that fail to comply with the statute of frauds are enforceable as written if the beneficiary proves detrimental reliance. RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 2.9 (2000) ("The consequences of failure to comply with the Statute of Frauds . . . do not apply if the beneficiary of the servitude, in justifiable reliance on the existence of the servitude, has so changed position that injustice can be avoided only by giving effect to the parties' intent to create a servitude."). We do not go so far. Instead, we conclude only that a defective easement may be competent evidence of a representation.

[6] *See, e.g.*, *Shepard v. Purvine*, 248 P.2d 352, 361-62 (Or. 1952) ("An oral license promptly acted upon in the manner plaintiffs acted is just as valid, binding, and irrevocable as a deeded right of way.").

by a handshake.[7]  The holder bears the burden to prove such an easement exists, whereas an express easement is recognized as a property interest as a matter of law (though its interpretation or application may be disputed).[8]

As other state high courts have held, a written representation regarding the use of land is one form of evidence to prove estoppel, even if the writing alone is not enforceable as a matter of law.[9]  The holder's burden is to establish the intent of the parties to create an easement.

---

[7] *See, e.g.*, *Hager v. City of Devils Lake*, 773 N.W.2d 420, 435-37 (N.D. 2009) (holding landowners estopped to deny city's easement to maintain a storm sewer system despite the lack of a writing because landowners requested system's construction, should have foreseen that it was permanent, and benefited from it for nearly thirty years).

[8] *Compare Bains v. Parker*, 182 S.W.2d 397, 399 (Tex. 1944) ("The burden is on the party claiming an easement in another person's land to prove all of the facts necessary to establish the easement."), *with Sw. Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 686 (Tex. 2020) (explaining that an unambiguous express easement may be interpreted as a matter of law).

[9] *E.g.*, *VTRE Invs., LLC v. MontChilly, Inc.*, 249 A.3d 646, 657 (Vt. 2020) (enforcing unsigned reciprocal covenants in deeds as a matter of estoppel where party had detrimentally relied on covenant to run drainpipe across neighboring land); *Riverview Cmty. Grp. v. Spencer & Livingston*, 337 P.3d 1076, 1081 (Wash. 2014) (en banc) ("[T]he statute of frauds is no barrier, at least when there is some writing, such as a plat, that supports the imposition of the burden [of an equitable servitude]."); *Lobato v. Taylor*, 71 P.3d 938, 947, 955-56 (Colo. 2022) (en banc) (holding that document granting rights of pasture, water, firewood, and timber did not meet the formal requirements for an express grant of rights but, taken with other facts, established an easement by estoppel); *see also Whaley v. Cent. Church of Christ of Pearland*, No. 01-02-01354-CV, 2004 WL 1405701, at *4-6 (Tex. App.—Houston [1st Dist.] June 24, 2004, no pet.) (holding easement by estoppel established as matter of law based on representations made in earnest money contract but omitted from deed); *Union Props. Co. v. Klein*, 333 S.W.2d 864, 867-69 (Tex. App.—Eastland 1960, writ ref'd n.r.e.) (upholding jury verdict finding easement by estoppel based in part on representations in unsigned contract).

11

The factfinder may consider conduct, parol evidence, and written representations to determine whether a representation was made. In *Drye*, our Court assumed that a combination of statements in brochures and advertisements was evidence of a representation, though we ultimately held the statements made were too indefinite to create an easement. 364 S.W.2d at 209-211. And in *Vrazel v. Skrabanek*, we held an easement by estoppel existed based on the conduct of the parties, which changed the location of an express road easement that had been obstructed. 725 S.W.2d 709, 711-12 (Tex. 1987).

The cases on which Boerschig relies do not support his contention that written representations cannot serve as evidence to support the creation of an easement by estoppel. In *Storms*, an appeal from a bench trial, Storms granted an express easement permitting ingress and egress to the purchaser of ten acres. 579 S.W.2d at 449-450. The purchaser sold a strip of the ten acres and the easement to Tuck, an adjacent owner of 1,100 acres. *Id*. at 450. Storms sued to enjoin Tuck from using the easement to access the 1,100 acres. *Id*. at 451. We declined to recognize an easement by estoppel in that case, noting that the record contained no evidence that Storms had represented that it would grant ingress and egress to the 1,100 acres. *Id*. at 452. We held Storms's silence while Tuck constructed a road insufficient to establish a representation. *Id*. at 453-54. Here, in contrast, the jury credited representations made in the Dooley Document—titled "Right of Way Easement"—as granting the holder a power line route.

Similarly, in *Drye*, the jury found that the developer of a neighborhood with a club on adjacent land had represented that

12

purchasers were entitled to use the club. 364 S.W.2d at 201-02. The club later ceased operations. *Id.* at 201. This Court rejected the existence of an easement by estoppel to preserve the club, holding that representations that the purchasers would have "the run of the ranch" were too indefinite. *Id.* at 209, 211. "Some degree of definiteness in the scope or extent of an interest is essential to its recognition as a property interest." *Id.* at 211. In addition, the purchasers had agreed that they "acquire[d] no interest whatsoever of any kind or character in or to the club property," belying a reliance interest on the marketing representations. *Id.* The Dooley Document, in contrast, provides for a specific and definite use, and Rio Grande's construction and maintenance of the line through the ensuing decades is evidence of reliance.

Our Court decided *Storms* and *Drye* based on a failure of proof of a representation or on a failure of reliance—both necessary elements of an easement by estoppel. The proof in this case is different, as it includes specific representations and continuous use for decades in reliance on them.

Finally, Boerschig points to the bona fide purchaser statute to urge us to disregard the jury's finding of an easement. "A conveyance of real property . . . is void as to a creditor or to a subsequent purchaser for a valuable consideration without notice unless the instrument has been acknowledged, sworn to, or proved and filed for record as required by law." TEX. PROP. CODE § 13.001(a). Recorded interests become part of the chain of title, and subsequent purchasers take property subject to

13

the recorded interest regardless of actual notice.[10] Easement holders who fail to record their easements risk the easement's failure against subsequent purchasers without notice. But purchasers with actual notice of an encumbrance have no injury, as any devaluation of the property due to the easement's evident use figured into the price the purchaser paid.[11]

Boerschig admitted at trial that he had actual notice of the 1947 line when he purchased the ranch. As Boerschig testified, the line is "hard to miss." And the power line route appeared on a survey prepared in connection with the purchase. Although the extent of Boerschig's notice is relevant to the scope of the easement, as we discuss in Part II,

---

[10] *425 Soledad, Ltd. v. CRVI Riverwalk Hosp., LLC*, 709 S.W.3d 551, 560 (Tex. 2024). Actual notice includes personal knowledge and "those things which a reasonably diligent inquiry and exercise of the means of information at hand would have disclosed." *Id.* (quoting *Flack v. First Nat'l Bank of Dalhart*, 226 S.W.2d 628, 632 (Tex. 1950)).

[11] *See Hamrick v. Ward*, 446 S.W.3d 377, 383 (Tex. 2014) ("There is a presumption that parties contracting for property do so 'with a view to the condition of the property as it actually was at the time of the transaction,' and therefore, absent evidence to the contrary, such conditions which openly and visibly existed at the time are presumed to be included in the sale." (quoting *Miles v. Bodenheim*, 193 S.W. 693, 696-97 (Tex. Civ. App.—Texarkana 1917, writ ref'd))); *see also Carrollton Tel. Exch. Co. v. Spicer*, 197 S.W. 827, 830 (Ky. 1917) ("To grant relief to the vendee in such cases in compensation by way of damages, or to give him the benefit of other remedies looking to the abatement of the incumbrance, such as ejectment, trespass to try title, or injunction, would be but rewarding him for that which he did not own, and would allow him to reap where he had not sown; this, because he is presumed to have purchased the property subject to the incumbrance, and to have paid for it the reduced value brought about by its construction.").

he is presumed to have purchased the property subject to this visible encumbrance.[12]

Boerschig did not object to the definition of an easement by estoppel in Question 3 of the jury charge.[13] The trial court instructed: "To establish an easement by estoppel, a landowner or his predecessor must have made a representation, either by words or conduct, that was believed by [Rio Grande] and upon which [Rio Grande] relied." The jury heard legally sufficient evidence on each point: the Dooley Document is some evidence of a representation; based on it, Rio Grande believed it had a valid easement; and Rio Grande relied on the representation in constructing the line and using it for over sixty years.

## II. Rio Grande's upgrade exceeded the scope of the easement.

Having concluded that Rio Grande obtained an easement by estoppel, we next consider whether Rio Grande's use remained within the scope of that easement. The trial court submitted Question 4 asking whether Rio Grande's upgrade exceeded the scope of the easement, and the jury answered "no." That answer tells us only that the jury failed to find that the easement's scope had been exceeded; it is not an affirmative

---

[12] *See Hamrick*, 446 S.W.3d at 383.

[13] "[I]t is the court's charge, not some other unidentified law, that measures the sufficiency of the evidence when the opposing party fails to object to the charge." *Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000). As a result, we do not address the following arguments by Boerschig: an easement by estoppel has a distinct equitable element; it is limited to representations made between vendor and vendee; there must be a "misrepresentation"; and these elements must be present at the same time. The jury instruction did not contain any of these features.

15

finding establishing the opposite: that Rio Grande's upgrade was within the scope of the easement.[14]

For its part, Rio Grande requested and received a declaratory judgment from the trial court that its upgrade "did not exceed the scope of its easement by estoppel." Estoppel is an affirmative defense to a trespass claim,[15] so it was Rio Grande's burden "to prove all of the facts necessary to establish [an] easement" by estoppel that authorized the upgrade at issue. *Bains*, 182 S.W.2d at 399. Here, those facts include the nature and extent of the landowner's representations regarding the easement holder's uses, the holder's detrimental reliance on those representations, and any subsequent purchaser's actual knowledge of the representations or uses. *Storms*, 579 S.W.2d at 451; *see also Moore Burger, Inc. v. Phillips Petrol. Co.*, 492 S.W.2d 934, 936, 939 (Tex. 1972) (holding party alleging defensive plea of estoppel to avoid statute of frauds "had the burden of producing evidence that [the purchaser of the property] had actual or constructive notice of the requisite facts which

---

[14] *See Phila. Indem. Ins. Co. v. White*, 490 S.W.3d 468, 488 (Tex. 2016); *Carl J. Battaglia, M.D., P.A. v. Alexander*, 177 S.W.3d 893, 903 (Tex. 2005); *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989); *C. & R. Transp., Inc. v. Campbell*, 406 S.W.2d 191, 194 (Tex. 1966). These cases show that our dissenting colleagues are incorrect to view the jury's "no" answer as an affirmative finding that Rio Grande "did not exceed" or "venture *outside*" "the scope of its easement." *Post* at 1-2, 7 (Bland, J., dissenting).

[15] *See* TEX. R. CIV. P. 94. A claim that the holder of an easement has engaged in activity exceeding its scope sounds in trespass. *See Marcus Cable*, 90 S.W.3d at 699 (remanding for trial trespass claim against cable company that used electric easement to string cable lines in excess of express easement's terms). We agree with our dissenting colleagues that the landowner bears the burden to prove the elements of a trespass claim. Here, the trespass question properly placed that burden, but the jury did not reach it.

16

operated as an estoppel"). Rio Grande failed to obtain an affirmative jury finding to support a declaration that the upgrade was within the scope of such representations, reliance, and knowledge.[16]

In this Court, however, Boerschig does not challenge the absence of a jury question that properly placed the burden of proof and yielded an affirmative finding that supports the trial court's judgment. Instead, he contends that on this record, the upgrade exceeded the scope of the easement as a matter of law. To determine whether he is correct, we must examine how the scope of an easement by estoppel is determined between the parties to the estoppel as well as the extent to which that estoppel binds a subsequent purchaser.

### A.     Scope of easements by estoppel

The scope of an express recorded easement is determined by "[t]he contracting parties' intentions, as expressed in the grant." *Marcus*

---

[16] The dissent contends (*post* at 1-2, 6) that Boerschig had the burden to prove that Rio Grande's upgrade exceeded the scope of its easement. We disagree. An easement by estoppel cannot serve as an affirmative defense to a trespass claim based on the upgrade unless the easement authorizes the upgrade. And the cases and rules just cited show that it was Rio Grande's burden to prove all facts necessary to support its affirmative defense of estoppel. The very nature of an affirmative defense (also called a plea in confession and avoidance) is that it does not attack the elements of the claim— here, trespass. Rather, it is a contention that even if the plaintiff proves those elements, the defendant is entitled to judgment in its favor for an independent reason. Thus, the defendant has the burden to prove the reason entitling it to judgment. *E.g.*, *Draughon v. Johnson*, 631 S.W.3d 81, 87-88 (Tex. 2021); *Teal Trading & Dev., LP v. Champee Springs Ranches Prop. Owners Ass'n*, 593 S.W.3d 324, 333 (Tex. 2020) ("The hallmark characteristic of an affirmative defense [such as estoppel] is that the burden of proof is on the defendant to present sufficient evidence to establish the defense and obtain the requisite . . . findings." (internal quotation marks omitted)).

*Cable*, 90 S.W.3d at 700-01. Thus, courts look to "the grant's terms" to determine the extent to which "the manner, frequency, and intensity of an easement's use may change over time." *Id.* at 701. For example, in *Houston Pipe Line Company v. Dwyer*, we held as a matter of law that when a utility installed an 18-inch gas pipeline, "the extent of [its] easement rights under [its] agreement [with the original landowner] became fixed and certain," and the easement's grant of authority only to "lay, construct, maintain, operate (and) repair" a pipeline did not "authorize[] [the utility] to . . . replace it with a line of substantially greater size." 374 S.W.2d 662, 664, 666 (Tex. 1964). But in *Southwestern Electric Power Company v. Lynch*, we held that the scope of an electrical transmission easement was not fixed by its initial use because that easement included broad, forward-looking language contemplating enlargement: it allowed the utility to "hang[] new wires on" the line or "reconstruct[]" the line with "variable numbers of wires" and "towers or poles made of wood[,] metal[,] or other materials." 595 S.W.3d 678, 688-89 (Tex. 2020) (emphasis omitted).

"The emphasis our law places upon an easement's express terms serves important public policies by promoting certainty in land transactions." *Marcus Cable*, 90 S.W.3d at 702. Properly documenting and recording an easement provides holders the greatest certainty of continuing enforcement to the extent of the parties' expressed intentions. "Similarly, those who grant easements should be assured that their conveyances will not be construed to undermine private-property rights—like the rights to 'exclude others' or to 'obtain a profit'—any more than what was [reflected] in the grant." *Id.* And "potential

18

purchaser[s] must be able to safely rely upon granting language" to "evaluate the burdens placed upon" the property. *Id.*

For an easement by estoppel, however, there is no recorded writing to consult in determining the easement's scope. Easements by estoppel are strictly limited because enforcing them undermines the writing and recording requirements of the statutes of frauds and conveyances, and extending them to subsequent grantees of the burdened estate who were not parties to the estoppel is in tension with the bona fide purchaser statute.[17]

We have explained that the nature and extent of an easement by estoppel "have not been clearly defined" and "authority for [the doctrine's] application is rare and nebulous" outside a "narrow band of cases" not at issue here—such as public dedications and a seller's representation to a buyer. *Drye*, 364 S.W.2d at 209-210; *see Storms*, 579 S.W.2d at 451 & n.3. Our courts of appeals agree that "[t]he gravity of a judicial means of acquiring an interest in land of another solely by parol evidence requires that equitable estoppel be strictly applied" and that it "be certain, precise, and clear." *Horner v. Heather*, 397 S.W.3d 321, 325 (Tex. App.—Tyler 2013, no pet.).[18] Thus, an easement by

---

[17] *See* TEX. BUS. & COM. CODE § 26.01; TEX. PROP. CODE §§ 5.021, 13.001; *Bujnoch*, 593 S.W.3d at 727 (applying statute of frauds to easement).

[18] *See also Louis A. Tsakiris Fam. P'ship. v. Waller County Rd. Improvement Dist. No. 1*, No. 01-22-00821-CV, 2025 WL 2445992, at *16 (Tex. App.—Houston [1st Dist.] Aug. 26, 2025, no pet.); *Smith v. Ranch Owners Ass'n*, No. 11-23-00231-CV, 2025 WL 51817, at *8 (Tex. App.—Eastland Jan. 9, 2025, pet. denied); *Cores v. LaBorde*, No. 13-17-00011-CV, 2018 WL 3062478, at *3 (Tex. App.—Corpus Christi–Edinburg June 21, 2018, no pet.); *Sandoval v. Cmty. Missionary Baptist Church*, No. 05-17-00456-CV, 2018 WL

19

estoppel should be a last resort: a party who uses another's property without properly documenting and recording an easement runs a substantial risk that enforcement will be either unavailable or narrower in scope than a comparable express easement.[19]

The elements of an easement by estoppel are helpful in articulating precise limits on the scope of such an easement. As discussed above, those elements include a representation by the owner of the burdened estate permitting a particular use of his land and action in detrimental reliance on that representation by the party claiming to hold the easement. *See Storms*, 579 S.W.2d at 451-52 ("[T]he owner of land may be estopped to deny the existence of an easement by making representations that have been acted upon by a purchaser to his detriment."). Because easements by estoppel are a specific application of the doctrine of equitable estoppel (estoppel in pais), they are "a creature of equity" that "seeks to prevent injustice and to protect innocent parties from fraud." *Id.* at 451; *see PDT Holdings, Inc. v. City of Dallas*, 712 S.W.3d 597, 603 & n.7 (Tex. 2025). Equity "enjoin[s] the [land]owner . . . from preventing the use" when "the other party has expended moneys which will be lost and valueless if the right to enjoy

---

1773208, at *4 (Tex. App.—Dallas Apr. 13, 2018, pet. denied); *Ramsey v. Champion*, No. 10-12-00394-CV, 2014 WL 1882758, at *2 (Tex. App.—Waco May 8, 2014, pet. denied); *McClung v. Ayers*, 352 S.W.3d 723, 729 (Tex. App.—Texarkana 2011, no pet.); *Martin v. Cockrell*, 335 S.W.3d 229, 237 (Tex. App.—Amarillo 2010, no pet.).

[19] *See Drye*, 364 S.W.2d at 209-211; RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 4.10 cmt. d (2000) (explaining that easement created by use permits "only the use that created the easement and closely related ancillary uses").

such easement is revoked." *F.J. Harrison & Co. v. Boring*, 44 Tex. 255, 267-68 (1875); *see Coleman v. Forister*, 514 S.W.2d 899, 904 (Tex. 1974). Put another way, estoppel applies when "injustice can be avoided only by establishment of a servitude" to protect the user's "substantial[] change [of] position in reasonable reliance on [the owner's] representation." RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 2.10 (2000).

These elements and rationales for easements by estoppel demonstrate that the scope of such an easement is limited to preventing injustice by protecting the holder's reliance interest—that is, the actual investment (or other change of position) that the holder made to use the land in reasonable reliance on the owner's representations. Thus, the jury was correctly instructed that the scope of an easement by estoppel is fixed by the use that created it.[20] This limitation is a familiar one in the law: for example, we similarly limit damages for fraudulent inducement to those suffered in actual and justifiable reliance on a misrepresentation when the parties' bargain is unenforceable due to the statute of frauds. *Haase v. Glazner*, 62 S.W.3d 795, 798-800 (Tex. 2001).

Because equitable estoppel is ordinarily mutual,[21] courts further limit its scope when the holder seeks to estop a non-party to the representation. Although generally "an estoppel of a grantor runs

---

[20] *See Dwyer*, 374 S.W.2d at 666; *see also* HENRY M. HERMAN, THE LAW OF ESTOPPEL § 330, at 341 (1871) ("The estoppel is called into life for the purpose of preventing wrong and redressing injury, and [should] never [be] carried further than is necessary to prevent one party from being injured by his reliance on the acts of another.").

[21] HERMAN § 332, at 344.

against his grantee," by statute "a bona fide purchaser for value and without notice of an estoppel against his grantor is not bound by it." *Moore Burger*, 492 S.W.2d at 939.[22] Thus, the extent of any "servitude benefits" of an "unrecorded servitude," such as an easement "created by . . . estoppel," are limited to those "that would be discovered by reasonable inspection or inquiry." RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 7.14(3) (2000).

In sum, the scope of an easement by estoppel is limited to the representations made by the landowner, narrowed by the holder's actual uses of the easement in reasonable reliance on the representations, and narrowed further—if the land has been sold—by the purchaser's notice of those representations or uses at the time of purchase. Accordingly, a holder seeking to change its actual existing use must provide evidence of the landowner's specific representations about the nature and extent of the permitted use. *See Drye*, 364 S.W.2d at 211. In addition, it must prove that the change is necessary to protect its reliance interest and that any purchaser had actual knowledge of the potential for such a change. Evidence that the purchaser had knowledge of a current estopping use does not suffice to establish that the easement's scope would cover a greater degree of future use that is more than de minimis. *See Dwyer*, 374 S.W.2d at 665-66.[23] Instead, a holder contemplating

---

[22] *See* TEX. PROP. CODE § 13.001; *see also Vinson v. Brown*, 80 S.W.3d 221, 229 (Tex. App.—Austin 2002, no pet.) ("[N]o easement by estoppel may be imposed against a subsequent purchaser for value who has no notice, actual or constructive, of the easement claimed.").

[23] *See id.* at 666 ("[W]hen defendant constructed its 18-inch pipeline with the consent and acquiescence of the plaintiff, the extent of defendant's

such a change "ha[s] the burden of producing evidence that [the purchaser] had actual or constructive notice of the requisite facts which operated as an estoppel" regarding the future use. *Moore Burger*, 492 S.W.2d at 939. Future uses outside the holder's rights—as defined by the representations, reliance, and knowledge—exceed the easement's scope and constitute a trespass.

In determining the holder's rights, neither a jury nor a court may speculate about the unexpressed purpose behind an easement created by operation of law and consider whether an expanded use would serve that purpose. Nor should they assess whether a change in such an easement's use is foreseeable, materially more burdensome to the landowner, or so different in kind and character as to constitute an entirely different use. The right to own property is "fundamental, natural, inherent, [and] inalienable," and its protection is "one of the most important purposes of government." *Tex. Dep't of Transp. v. Self*, 690 S.W.3d 12, 25 (Tex. 2024) (quoting *Eggemeyer v. Eggemeyer*, 554 S.W.2d 137, 140 (Tex. 1977)). Courts and juries are not free to give away more of a landowner's property rights whenever they feel that the societal benefit of an expanded use outweighs its burden on the landowner. That judgment is for the other branches of government and entities on which they have conferred condemning authority, and our Constitution demands that the landowner be compensated when a greater easement is taken. TEX. CONST. art. I, § 17(a); *see Tarrant Reg'l*

---

easement rights under the 1926 agreement became fixed and certain."); *Lakeside Launches, Inc. v. Austin Yacht Club, Inc.*, 750 S.W.2d 868, 873 (Tex. App.—Austin 1988, writ denied) (rejecting easement by estoppel where existing use did not put owner on inquiry notice "about a possible higher use").

*Water Dist. v. Gragg*, 151 S.W.3d 546, 554 (Tex. 2004) ("At the heart of the takings clause lies the premise that the government should not forc[e] some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." (alteration in original) (internal quotation marks omitted)).

Once the scope of the authorized use has been defined in this manner, an additional consideration may be relevant in deciding certain disputes: whether activity within the easement is necessary to the continuation of that use. We have recognized that with express easements, "[n]othing passes by implication except what is reasonably necessary to fairly enjoy the rights expressly granted." *Marcus Cable*, 90 S.W.3d at 701 (cleaned up). Similarly, an easement by estoppel includes within its scope only activities—such as access, repairs, and maintenance of the area—that are reasonably necessary to fairly enjoy the usage rights defined by the representations, reliance, and knowledge. *E.g.*, *Whaley v. Cent. Church of Christ of Pearland*, 227 S.W.3d 228, 231-32 (Tex. App.—Houston [1st Dist.] 2007, no pet.). Whether an action is reasonably necessary to use and enjoy an easement can present a jury question. *See DeWitt County Elec. Coop. v. Parks*, 1 S.W.3d 96, 102-03 (Tex. 1999) (discussing case upholding jury finding that extent of "cutting the trees . . . went beyond what was reasonably necessary for the utility's use and enjoyment of the easement"). If the holder proves that the activities at issue are reasonably necessary, its ability to conduct those activities must be narrowly drawn to burden the landowner as little as possible. *See Lynch*, 595 S.W.3d at 690; *Lakeside Launches*, 750 S.W.2d at 871.

24

### B.     Application

We apply these legal standards for the scope of an easement by estoppel to determine whether the record here shows that Rio Grande's upgrade exceeded the scope of the easement as a matter of law.  As discussed, we first examine the extent of Rio Grande's reliance interest.  On that question, undisputed evidence shows that the only actual investment Rio Grande made in reliance on the Dooley Document's 1947 representations of an easement was to construct that year and maintain thereafter a lower-voltage electric distribution line along a specific 1.6-mile route that consisted of between seventeen and twenty poles, each standing thirty feet above the ground and carrying four wires on a single crossarm.  Allowing Rio Grande to maintain that use is sufficient to prevent injustice.  Rio Grande does not identify, and we have not found, any evidence tending to show that replacing this line with one using sixty poles—each seven feet taller above the ground and carrying seven wires on two crossarms—was necessary to protect an investment Rio Grande had made in reasonable reliance on the Document's representations.

We must also consider whether Boerschig, a subsequent owner, had actual or constructive notice of facts indicating that an easement authorized Rio Grande to triple the number of poles and nearly double the number of wires.  Boerschig admitted at trial that he observed the 1947 line before buying the property, which supports the jury's finding of an easement by estoppel as we have explained.  But the record also shows these observations were the only notice Boerschig had regarding the scope of that easement.  It is undisputed that Boerschig had neither

25

actual nor inquiry notice of the unrecorded Dooley Document, so any expectations of the original parties it might reflect regarding the scope of the easement cannot bind him. Because the evidence is conclusive that Boerschig lacked any notice regarding the scope of the easement other than the 1947 line he could see, no jury question was necessary to establish that point. *See City of Keller*, 168 S.W.3d at 814-15, 815 n.52.

Nor is there evidence that tripling the number of poles and nearly doubling the number of wires was an activity reasonably necessary to Rio Grande's continued enjoyment of its existing use of the line, as our dissenting colleagues contend. *Post* at 8, 10 (Bland, J., dissenting).[24] Rio Grande's CEO testified that the purposes of upgrading this "backbone feeder" distribution line were to serve new customers in the future: (1) to provide electric service to a new Lone Star Gas pipeline compressor station; and (2) to connect to a new electric substation Rio Grande planned to build "in anticipation of the growth that's going to occur" in the area and "back up the [existing] substation, so that if we lost [that station], we could pick it up from the [new substation] . . . and we could meet [Lone Star Gas's] load needs." Lone Star Gas paid for the upgrade.

The CEO also testified that the existing line serves "roughly 1,000 consumers" and that their electricity would be "turned off" if the line were "shut down." But no one was seeking to shut the line down, and nothing in the record indicates that Rio Grande would be unable to continue using and maintaining its line as it has for decades. In sum,

---

[24] We emphasize that an easement—unlike a lease—is a nonpossessory right to use certain land for a particular purpose, not a possessory right to land allowing unlimited use within a footprint or route. *Lance*, 543 S.W.3d at 736.

26

there is no evidence that the upgrade Rio Grande performed was reasonably necessary to continue serving existing customers.[25]

For these reasons, we hold the record conclusively establishes that the scope of Rio Grande's easement by estoppel was not broad enough to authorize the upgrade. Undisputed evidence also shows that Rio Grande entered Boerschig's ranch and built the new line without his consent and subject to his claim of trespass. Because there are no other disputed facts regarding whether a trespass occurred, Boerschig is entitled to judgment on his trespass claim as a matter of law.

## CONCLUSION

We reverse the court of appeals' judgment, render judgment that Rio Grande trespassed on Boerschig's property by constructing the

---

[25] We disagree with the dissent (*post* at 11-12) that our opinion prohibits an electric utility holding an easement by estoppel from adding any poles, replacing wooden poles with similar composite poles, or replacing a line that has been destroyed with a similar line to continue serving existing consumers. Under the standards we have explained, a utility may offer evidence that changes or replacements to its line are necessary to protect its investment made in reliance on the landowner's representations, or that its activity within the easement is reasonably necessary to its continued enjoyment of the existing use and narrowly drawn to burden the owner as little as possible.

upgraded line, and remand the case to the trial court for further proceedings regarding appropriate relief.[26]

_____

J. Brett Busby
Justice

**OPINION DELIVERED:** May 22, 2026

_____

[26] Rio Grande remains free to exercise its eminent domain power to condemn an expanded easement authorizing the upgrade. Indeed, the record shows that Lone Star Gas, the new user being served by Rio Grande's upgraded line, provided funds to acquire an easement across other property.